# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH MARTINEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>J. CATHEY, SGT., et. al.,<br><br>    Defendants. | CV F   02 6619 REC LJO P<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 55 ) |

**A.  RELEVANT PROCEDURAL HISTORY**

Kenneth Martinez ("Plaintiff") is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is proceeding on the complaint filed on December 24, 2002, against Defendants Cathey, Alcantar, Fischer, Marshall, Meske, and Williams.  The Complaint challenges the sufficiency and reliability of the information used to validate him as an associate of the Mexican Mafia ("EME") prison gang in violation of Due Process.

On November 5, 2004, Defendants filed a Motion for Summary Judgment.  (Court Doc. 55).  On December 8, 2004, Defendants filed a Notice of Motion and Motion to seal Exhibits A,

C, D, and G to the Declaration of E.W. Fischer submitted in support of the Motion for Summary Judgment and for *in camera* review of those documents.

On January 27, 2005, the Court granted Defendant's Motion to Seal the exhibits, however, the Court indicated that it would not consider the evidence in support of the Motion unless Defendants either (1) disclosed the documentation to Plaintiff; (2) provided legal authority allowing the Court to rely on evidence submitted but not disclosed to the opposing party to resolve a dispositive motion; or (3) withdraw the evidence from the Court's consideration.

On February 25, 2005, Defendants filed a Response to the Court's Order and provided argument as to why the Court should consider the evidence *in camera*. In the alternative, Defendants moved to withdraw the exhibits. Finding the authority provided unsupportive of Defendant's position, the Court granted the request to withdraw the exhibits from the Court's consideration in support of the Motion for Summary Judgment. Defendants moved for Reconsideration of the Order by the District Court on April 1, 2005. The District Court ordered Defendants to resubmit the evidence under seal for consideration of the Motion for Reconsideration.

On January 30, 2006, the District Court granted Defendant's Motion for Reconsideration and ordered this Court to consider the evidence submitted in making a recommendation on the Motion for Summary Judgment.

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

2

on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**C. UNDISPUTED FACTS**[1]

1. On August 12, 1997, Plaintiff was convicted of violating California Penal Code § 32 (Accessory after the Fact) and three enhancements under California Penal Code § 667.5(b) (prior felony convictions). Plaintiff was sentenced to a term of nine years.

2. Upon Plaintiff's incarceration in 1997, Plaintiff was housed within the California Department of Corrections ("CDC"), at North Kern State Prison ("NKSP").

3. On January 19, 1998, in an Order for Placement in segregated housing, Plaintiff was placed in administrative segregation ("ad-seg") pending a review of his participation in causing an inmate work stoppage.

4. On January 22, 1998, in an Institutional Classification Committee ("ICC") report, Plaintiff was advised that pending a review of the Rules Violation Report

---

[1] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate statement of disputed facts. Local Rule 56-260(b). Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendants' statement of undisputed facts, the Court accepts Defendants' version of the facts where Plaintiff's verified complaint is not contradictory. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge).

4

|   |   |   |
|---|---|---|
| 1 |   | ("RVR") 110, he would remain in the ad-seg unit, and the violation could lead to |
| 2 |   | his placement in the Segregated Housing Unit ("SHU"). |
| 3 | 5. | On April 23, 1998, Plaintiff appeared before the ICC for a hearing on his |
| 4 |   | placement.  It was noted that Plaintiff received a 12 month SHU term for leading |
| 5 |   | the work stoppage with a maximum or minimum eligible release date ("MERD") |
| 6 |   | of October 19, 1998. |
| 7 | 6. | On April 20, 1998, Defendant Cathey, while assigned as the Administrative |
| 8 |   | Sergeant, received a request from inmate Sanchez requesting a cell move. |
| 9 |   | Sanchez is a validated member of the Mexican Mafia or "EME". |
| 10 | 7. | On April 22, 1998, Defendant Alcantar, a member of the Institutional Gang |
| 11 |   | Investigations Unit, received the CDC Form 128-B from Defendant Cathey. |
| 12 |   | Defendant Alcantar noted in his CDC Form 128-B that celling with a validated |
| 13 |   | member of the EME was indicative of Plaintiff's association with the EME. |
| 14 | 8. | On April 27, 1998, Defendant Alcantar received a letter from Inmate Sanchez to |
| 15 |   | his girlfriend describing in detail a business transaction involving an automobile |
| 16 |   | owned by Plaintiff.  Defendant Alcantar concluded that the details of the letter |
| 17 |   | were indicative of Plaintiff's association with a member of the EME. |
| 18 | 9. | On May 14, 1998, Plaintiff was advised that he would be transferred to Corcoran |
| 19 |   | State Prison ("Corcoran") to complete his SHU term for the Rules Violation |
| 20 |   | Report 115 regarding his participation in the work stoppage. |
| 21 | 10. | On June 8, 1998, Plaintiff was transferred to Corcoran SHU. |
| 22 | 11. | On June 17, 1998, Plaintiff appeared before the Corcoran ICC Facility-IV Yard A |
| 23 |   | SHU.  Plaintiff requested that he be placed in yard B-1 with the Southern |
| 24 |   | Hispanics.  Plaintiff's release date from the SHU was listed as October 19, 1998. |
| 25 | 12. | On June 30, 1998, Defendant Fischer, Special Agent with the Special Services |
| 26 |   | Unit, issued a CDC Form 128-B-2, validating Plaintiff as an associate of the |
| 27 |   | EME.  The items used to validate Plaintiff were two CDC 128-B chronos, dated |
| 28 |   | April 23, 1998, and April 28, 1998, and a Confidential Memorandum, dated April |

1      30, 1998.

2   13. On August 13, 1998, two Confidential Information Disclosure Forms were issued to Plaintiff informing him that he had been identified as being an associate of the prison gang, EME. The forms referenced the 128-B form dated April 28, 1998, and the Confidential Memorandum issued April 30, 1998.

14. On August 13, 1998, Plaintiff appeared before the Corcoran ICC Facility IV Yard B SHU for his initial review of his placement in Yard B. Additionally, the committee considered the validation information contained in CDC Form 128-B-2 dated June 30, 1998, by Defendant Fischer indicating Plaintiff's association with the EME. Plaintiff was placed on an indeterminate SHU status upon his MERD expiration date of October 19, 1998.

15. On September 28, 1998, Corcoran staff issued an Order for Placement in Segregated Housing on the basis of a September 12, 1998, RVR 115 for possession of an inmate manufactured weapon. The next ICC review would occur on October 1, 1998.

16. On October 1, 1998, Plaintiff appeared before the Corcoran ICC for his initial classification pending the review of his RVR 115, dated September 12, 1998. Although the ICC noted the existing 128-B-2 concerning Plaintiff's gang affiliation, the committee elected to retain Plaintiff in the SHU pending his MERD expiration date of October 18, 1998.

17. On October 22, 1998, Plaintiff appeared before the Corcoran ICC Facility IV B his ad seg review. Although Plaintiff's MERD date of October 18, 1998, had expired, the Committee elected to refer the case to the Classification Services Representative ("CSR") to reinstate Plaintiff's indeterminate status as a result of his validation as an associate of the EME and the pending referral to the District Attorney for the RVR 115. Defendant Williams, the CSR, endorsed Plaintiff's indeterminate SHU status on the basis of the threat to the security of the institution.

18. Plaintiff's detention in the SHU was reviewed by the classification committee on November 17, 1998, February 2, 1999, March 18, 1999, August 19, 1999, October 7, 1999, February 3, 2000, August 31, 2000, September 28, 2000, October 24, 2000, April 5, 2001, July 16, 2001, September 6, 2001, April 18, 2002, September 5, 2002, and April 3, 2003.  Each time, the Committee elected to retain Plaintiff in the SHU.

**D. ANALYSIS**

*1. Summary of Complaint*

The Complaint alleges that the evidence used to validate Plaintiff as an associate of the Mexican Mafia ("EME") Prison Gang is unreliable and therefore, insufficient.

*2. Gang Validation Process*

An inmate may be identified by CDC staff as a potential gang member or associate based on his behavior.  An Institutional Gang Investigator ("IGI"), who generally has experience with gangs, investigates the inmate's possible gang activities and determines whether there is sufficient evidence to validate the inmate. 15 Cal.Code Regs. § 3378(c).  The IGI also interviews the inmate to allow him to rebut the evidence supporting the contemplated validation.

Under California State Regulations, an inmate may be validated as a member or associate of a gang based on a *minimum* of three or more source items indicating gang activity, such as self-admission, writings, tattoos, photos, information from informants, and association or communication with other gang members or associates.  15 Cal.Code Regs. § 3378(c)(3), (4).  The inmate is normally placed in administrative segregation pending review and if validated, assessed an indeterminate administrative segregation term in the Secured Housing Unit. Id.; 15 Cal.Code Regs § 3341.5(c)(2).  Once validated as a gang member/associate, an inmate can be released under several circumstances, the most common of which are debriefing (i.e., disassociating himself from the gang), inactivity in the gang and release from custody.  15 Cal.Code Regs. §§ 3378(c)(2)(5); 3341.5(c)(4).

*2. Due Process Claim*

Interests that are procedurally protected by the Due Process Clause may arise from the

7

1  Due Process Clause itself and the laws of the states. Hewitt v. Helms, 459 U.S. 460, 466 (1983)
2  *overruled, in part, on other grounds by* Sandin v. Conner, 515 U.S. 483, 484 (1995.); Meachum
3  v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2 532 (1976).   The Ninth Circuit has held that the
4  hardship associated with administrative segregation is not so severe as to violate Due Process.
5  See Toussaint v. McCarthy, 801 F.2d. 1080, 1091-91 (9th Cir. 1986).  However,  changes in the
6  conditions of confinement may amount to a deprivation of a state-created and constitutionally
7  protected liberty interest, provided the liberty interest in question is one of "real substance" and
8  where the restraint "imposes an atypical and significant hardship on the inmate in relation to the
9  ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 477, 484-87, 115 S.Ct. 2293
10 (1995).   The placement of an inmate in the Segregated Housing Unit ("SHU")  indeterminately
11 may amount to a deprivation of a liberty interest of "real substance" within the meaning of
12 Sandin.  See Wilkinson v. Austin, -- U.S. --, 125 S.Ct. 2384, 2394-95 , 162 L.Ed.2d. 174 (2005).

13         When prison officials initially determine whether a prisoner is to be segregated for
14 administrative reasons and a liberty interest of real substance is implicated, due process requires
15 that they hold an informal nonadversary hearing within a reasonable time after the prisoner is
16 segregated, inform the prisoner of the charges against him or the reasons segregation is being
17 considered, and allow the prisoner to present his views. Barnett v. Centoni, 31 F.3d 813, 815 (9th
18 Cir. 1994); Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.1986), *cert. denied*, 481 U.S.
19 1069 (1987); Wilkinson, 125 S.Ct. at 2397 (determining prisoner constitutionally entitled only to
20 informal, non-adversary procedures prior to assignment to "Supermax" facility).   However,
21 inmates are not entitled to the full progeny of the due process protections; in this context, due
22 process requires some notice of the charges against him and a meaningful opportunity to present
23 his views to the critical decisionmakers.  See Mathews v. Eldridge, 424 U.S. 319, 333 (91976)
24 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful
25 time and in a meaningful manner.") (*citations and internal quotation marks omitted*); Madrid v.
26 Gomez, 889 F.Supp. 1146, 1277 (N.D. Cal. 1995).

27         Due process also requires that there be an evidentiary basis for the prison officials'
28 decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472

8

U.S. 445, 455, 105 S.Ct. 2768 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Id. at 1105. The standard is only "minimally stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987). The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation. See Bruce v. Ylst, 351 F.3d 1283, 1287-88 (9th Cir.2003).

In addition, there is authority for the proposition that the evidence relied upon to confine an inmate to the SHU for gang affiliation must have "some indicia of reliability" to satisfy due process requirements. Madrid v. Gomez, 889 F.Supp. 1146, 1273-74 (N.D.Cal.1995); see also, Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir.1990), *cert. denied*, 502 U.S. 874, 112 S.Ct. 213 (1991) (considering accuracy of polygraph results when used as evidence to support placement in administrative segregation); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987) (evidence relied upon by a prison disciplinary board must have "some indicia of reliability"). When this information includes statements from confidential informants, as is often the case, the record must contain "some factual information from which the committee can reasonably conclude that the information was reliable." Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987), *cert. denied*, 487 U.S. 1207, 108 S.Ct. 2851 (1988). The record must also contain "a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." Id. Defendants bear the burden of showing "some evidence" in the record to support an administrative segregation decision and that evidence must have some indicia of reliability." Toussaint v. Rowland, 711 F.Supp. 536, 542 (N.D. Cal. 1989) ("Toussaint V") *aff'd in part, rev'd in part sub nom,* Toussaint v. McCarthy, 926 F.2d 800 (9th Cir. 1990) ("Toussaint VI"), *cert. denied,* 502 U.S. 874, 112 S.Ct. 213 (1991).

Finally, prison officials must engage in periodic review of an inmate's confinement in administrative segregation. Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864 (1983) *overruled, in part, on other grounds by* Sandin v. Conner; Toussaint, 801 F.2d at 1101. Such review must amount to more than "meaningless gestures." Toussaint v. Rowland, 711 F.Supp.

9

1   536, 540 n. 11 (N.D. Cal. 1989) (*citing* Toussaint v. McCarthy, 801 F.2d at 1102.)

2   In the instant case, it is undisputed that Plaintiff was notified that the classification
3   committee was considering keeping him in SHU detention based on this gang validation and had
4   the opportunity to present his views to the Committee at the October 21, 1998, hearing. (Exh.
5   CC, Reyff Decl.) Accordingly, the Court finds Plaintiff's due process rights in this regard were
6   not violated.

7   With respect to Plaintiff's allegation of insufficient evidence, the U.S. Supreme Court has
8   held that in examining the evidence used to support a disciplinary decision, there need not be "a
9   particular number of pieces of evidence to support the disciplinary decision" but only that there
10  be "some evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985). As noted above, when
11  information includes statements from confidential informants, the record must contain "some
12  factual information from which the committee can reasonably conclude that the information was
13  reliable." Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987), *cert. denied*, 487 U.S. 1207,
14  108 S.Ct. 2851 (1988).   The record must also contain "a prison official's affirmative statement
15  that safety considerations prevent the disclosure of the informant's name." Id.

16  In this case, Defendants present evidence that on June 15, 1998, Defendant Fischer, of the
17  Gang Intelligence Unit in Sacramento, received a gang validation packet from Defendant
18  Williams of the Institutional Gang Investigation Unit at North Kern State Prison. (Fischer Decl.
19  at ¶ 4.) The package included three pieces of "source" evidence that consisted of:

20  (1)   A cell arrangement request indicating that inmate Sanchez wished
21        to be celled with Plaintiff. (Exh. B, Fischer Decl.). Defendant
22        Cathey issued a Gang Related General Chrono 128-B form identify
23        this information on April 22, 1998. (Exh. L, Reyff Decl.);
24  (2)   A letter sent by inmate Sanchez to his girlfriend describing an auto
25        sale arrangement by Plaintiff (via his mother) to Sanchez and
26        referring to Plaintiff by his gang moniker. (Exh. C, Fischer Decl.
27        submitted under Seal). On April 28, 1998, Defendant Alcantar
28        issued a Gang Related General Chrono identifying this

information. (Exh. N, Reyff Decl.); and

(3) A confidential memorandum issued on April 30, 1998, memorializing a debriefing statement from a confidential source identifying Plaintiff as a known associate of the EME. (Exh. D, Fisher Decl. submitted under Seal).

(Fischer Decl. at ¶ 5.) After reviewing the information submitted to him, Defendant Fischer concluded that all items met the criteria used by the Gang Intelligence Unit to validate Plaintiff as an associate of the EME. (Fischer Decl., ¶ 6.) Plaintiff was notified of the source items in a CDC Form 128-B-2 signed by Defendant Fischer on June 30, 1998. (Exh. E, Fischer Decl.; Exh. R, Reyff Decl.)

The Court has conducted an *in camera* review of the evidence submitted under Seal by Defendants as directed by the District Court,[2] and concludes that the evidence relied on is sufficiently reliable and meets the "some evidence" standard. The confidential memorandum memorializes a debriefing interview with a confidential source describing various activities and events of the EME and identifying Plaintiff by his gang "moniker" as an associate of the EME. (Exh. D, Fischer, Decl. submitted under seal.) The memorandum contains a statement by prison officials that the information provided by the confidential informant was considered reliable under the California Code of Regulations. (Exh. D, Fischer Decl. submitted under seal.) The Declaration provided by Defendant Fischer also contains the requisite affirmative statement that the safety concerns prevent disclosure of the informant's name. (Fischer Decl. at ¶5c.) Although the number of sources is irrelevant to the federal due process analysis under the "some evidence" standard, the Court finds the remaining two sources of information corroborate Plaintiff's association with the EME. Accordingly, based on the above, the Court finds Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a

---

[2] As noted above, on Motion by Defendants, the District Court, on January 27, 2006, granted Defendant's Motion for Reconsideration of this Court's Order declining to considered sealed evidence in support of the Motion for Summary Judgment without disclosure to the opposing party. (Documents 63, 74.)

genuine issue of material fact. The burden therefore shifts to Plaintiff to establish the existence of a genuine issue as to any material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff did not file an Opposition to the Motion for Summary Judgment. After having reviewed the entire record including the Complaint, the Court finds there exists no triable issue of fact on Plaintiff's due process allegation.

### E. CONCLUSION AND RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that Defendant's Motion for Summary Judgment be GRANTED and the case DISMISSED.

The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 6, 2006**           /s/ Lawrence J. O'Neill
b9ed48                              UNITED STATES MAGISTRATE JUDGE